PARKER, insurance commissioner, *v.* WEST VIEW
CEMETERY ASSOCIATION *et al.*

No. 14326.   JANUARY 13, 1943.

242

*W. F. Bucha*ua*n* and *B. D. Murphy,* for plaintiff.

*James A. Br*auc*n, Thomas B. Branch Jr.,* and *James A. Branch* Jr., for defendants.

BELL, Presiding Justice. The petition construed, as it should be, most strongly against the plaintiff did not present the contention that the basic contracts for purchase and sale of the cemetery lots or grave spaces would, if standing alone and without the protective certificates, constitute contracts of life insurance; but as to such contracts the only complaint was that the protective certificates that were issued in connection with them made them contracts of life insurance. While it was insisted in the brief that the original contracts of purchase and sale did within themselves contain the element of life insurance, a careful consideration of the record, including the judgment, convinces us that this question was neither presented by the petition nor decided by the trial judge. In this view, no decision can properly be made by this court as to the nature of the contracts of purchase and sale stripped of the protective certificates.

The judgment under review is one refusing an interlocutory injunction, and the question is whether the judge abused his discretion in such refusal. While it has been held that when the grant or refusal is based upon a question of law, the rule as to discretion does not apply, nevertheless it is apparent in this case that the judge merely decided that under the facts an injunction was not required pending final trial. "Injunction *ad interim* is a part of equity police. It is a device to keep the parties in order, and prevent one from hurting the other whilst their respective rights are under adjudication. There is often a cry for the police when there is no real danger. The equity of a bill is not lost because an injunction is denied, or because it is not applied for before the final hearing. Acts done *pendente lite* can not obstruct the court in granting an injunction properly moulded, or in decreeing other appropriate relief, in the end. Such acts may be brought into the bill by amendment, . . and parties will commit them at their peril." *Kirtland* v. *Macon, 62 Ga.* 747 (2), 750. "The truth is, that the purpose of an interlocutory injunction is wholly provi-

sional; it is preliminary and preparatory; it looks to a future and final hearing, more deliberate, solemn, and complete than any which has been had; and while contemplating what the result of that hearing *may* be, it by no means forestalls it, or settles what it *shall* be." *National Bank of Augusta* v. *Printup*, 63 *Ga.* 570, 576. See also *Georgia Pacific Railway* v. *Douglasville*, 75 *Ga.* 828 (2) ; *First National Bank of Dublin* v. *Colonial Fire Underwriters Insurance Co.*, 160 *Ga.* 166 (1 *c*) (127 S. E. 455) ; and compare, as to receivers, *West* v. *Mercer*, 130 *Ga.* 357, 360 (60 S. E. 859).

As to the protective certificates, the defendants alleged in their answer that no more of them would be issued. As to the proposed new arrangement, under which the defendant association would obtain from a licensed insurance company a master policy insuring the lives of purchasers under existing contracts for sums equivalent to the unpaid balances of purchase-money, and on basis of such policy would cause a certificate to be issued to each purchaser, it appeared from the answer that the defendants did not intend to adopt this new plan unless it should be first approved by the court, and it does not appear that such approval has been given.

In the circumstances, the judge was authorized to find that the defendants would not in the future issue protective certificates of any character until further order of the court, and that an interlocutory injunction was therefore unnecessary.

Whether it might be assumed, under the pleadings and the evidence, that the defendants would, unless enjoined, continue to issue the same type of contract of purchase and sale *minus* the protective certificates, the petition, as we have stated, did not seek an injunction on this ground. The plaintiff did pray, however, that the defendants be enjoined from collecting further payments on the outstanding contracts, in connection with which the protective certificates had been issued, contending that in these circumstances the contracts of purchase and sale, considered with the protective certificates, constituted contracts of life insurance, and that the defendants in making such collections on past contracts would be continuing in the life-insurance business, without authority of law. As to the legal nature of the contracts as thus considered, compare Ga. L. 1937, p. 702, Ga. Code Ann. 1941, § 56-901; *Benevolent Burial Association* v. *Harrison*, 181 *Ga.* 230 (181 S. E. 829); *Clark* v. *Harrison*, 182 *Ga.* 56 (184 S. E. 620); *South Georgia*

*Funeral Homes* v. *Harrison,* 182 *Ga.* 60 (184 S. E. 875) ; s. c. 183 *Ga.* 379 (188 S. E. 529) ; *Harrison* v. *Tanner-Poindexter Co.,* 187 *Ga.* 678 (1 S. E. 2d, 646). Even though the plaintiff may be correct as to this matter, it does not follow that the defendants ought to have been enjoined from making further collections on the existing contracts.

According to the record, there are about eighteen hundred purchasers who would be affected, and none of them were made parties. Some or all of them may desire to enforce the contracts against the cemetery association; and if so, they are entitled to be heard on whether they may do so. As to such enforceability, see *Towers Excelsior & Ginnery Co.* v. *Inman,* 96 *Ga.* 506 (23 S. E. 418) ; *Jalonick* v. *Greene County Oil Co.,* 7 *Ga. App.* 309 (66 S. E. 815) ; *Liverpool & London & Globe Insurance Co.* v. *Georgia Auto & Supply Co.,* 29 *Ga. App.* 334 (2), 353 (115 S. E. 138) ; *Strother* v. *Mutual Benefit Health & Accident Association,* 49 *Ga. App.* 811 (176 S. E. 84) ; 13 Am. Jur. 816, § 768; 29 Am. Jur. 80, § 43.

Furthermore, on application for an ad interim injunction, there should be a balancing of conveniences and a consideration of whether greater harm might be done by granting than by refusing it. *Everett* v. *Tabor,* 119 *Ga.* 128 (4) (46 S. E. 72).

Under this principle, it has been stated that the public convenience and the rights of third persons may also be considered. 28 Am. Jur. 254, § 57; 32 C. J. 81-83, § 66.

The Code, § 55-108, declares: "The granting and continuing of injunctions shall always rest in the sound discretion of the judge, according to the circumstances of each case. The power shall be prudently and cautiously exercised, and except in clear and urgent cases should not be resorted to." Under the facts of the present case, it can not be said as a matter of law that the judge abused his discretion in refusing an interlocutory injunction.

*Judgment affirmed.   All the Justices concur.*