**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 4, 2015**

# In the Court of Appeals of Georgia

A14A0983. STRANGE v. TOWNS et al.

MILLER, Judge.

Tony Lenoy Strange brought a declaratory judgment action against Bertha Mae Towns and Raymond Towns, seeking a determination that Tony was the only trustee of the Pauline Strange Inter Vivos Trust (the "Trust") based on documents executed by Pauline before she died. Following a hearing, the trial court denied Tony's petition. Tony appeals, contending that the trial court erred in concluding that the subject documents did not constitute a valid revision of the Trust. For the following reasons, we reverse.

"A trial court's findings of fact after a declaratory judgment hearing are analogous to a jury verdict and will not be interfered with if there is any evidence to support them. However, we review the trial court's conclusions of law de novo."

(Citation and punctuation omitted.) *Bank of the Ozarks v. DKK Dev. Co.*, 315 Ga. App. 539, 540 (726 SE2d 608) (2012).

So viewed, the evidence shows that in March 2001, Pauline Strange created the Trust, naming herself as the trustee. On May 2, 2011, Pauline executed her last will and testament devising the entire residue of her estate to the Trust. That same day, Pauline amended the Trust, naming her son, Tony; her nephew, Raymond Town; and her sister, Bertha Town, to serve as successor co-trustees.

On July 9, 2012, Pauline executed a "General Durable Financial Power of Attorney," stating that she wished for Tony to be the executor of her estate and the Trust. The document further provided that "[t]his agreement is for the sole benefit of Mr. Tony Lenoy Strange[] in the management of ([the Trust]) in which he has full [ownership] pursuant to [the] final wishes of Mrs. Pauline Strange." The document was signed by Pauline and Tony.

Thereafter, in August 2012, Pauline wrote a letter to Scott Lowry, a lawyer at the law firm that revised the Trust in 2011, explaining that the law firm misunderstood her true intent. Pauline advised that the law firm needed to revise the Trust to name Tony as the trustee of the Trust and executor of her estate and name the Towns as alternate trustees and executors, respectively. Pauline further stated that she

2

had already executed a document to reflect the revisions to the Trust should the law firm fail to amend the Trust prior to her death. Pauline died in October 2012.

On appeal, Tony argues that the trial court erred in concluding that Pauline did not validly revise the Trust to make Tony the sole trustee. We agree.

"The cardinal rule in construing a trust instrument is to discern the intent of the settlor and to effectuate that intent within the language used and within what the law will permit." (Citation and punctuation omitted.) *Smith v. Hallum,* 286 Ga. 834 (691 SE2d 848) (2010); see also *Ferst v. Ferst*, 208 Ga. App. 846, 847 (432 SE2d 227) (1993).

Under OCGA § 53-12-40 (a), "[a] settlor shall have no power to modify or revoke a trust in the absence of an express reservation of such power." Further, under OCGA § 53-12-40 (c), any modification of a trust is required to be in writing and signed by the settlor.

Here, under Article 4.1.1 of the Trust, "[t]he Settlor may at any time by duly executed written instrument alter or amend this Trust in any manner." Consequently, Pauline, as the settlor of the Trust, reserved the right to alter or amend the Trust. OCGA § 53-12-40 (a). There is no dispute that Pauline signed a power of attorney on

3

July 9, 2012 that expressed her intent to name Tony as the executor of her estate and the Trust.

The trial court found that the July 9 power of attorney did not constitute a valid revision because the document was not properly notarized. OCGA § 53-12-40 (c), however, requires only that a modification be in writing and signed by the settlor. To the extent Article 4.1.1 of the Trust required the document to be notarized, because it references a duly executed written instrument, the notary properly authenticated the document. Notably, the July 9 power of attorney clearly shows that, in addition to signing the document, the notary used a stamp that imprinted her name, the words "Notary Public," the name of the state, and the county of her appointment. OCGA § 45-17-6 (a) (1) plainly provides that, by providing this information, the notary properly authenticated the document. Moreover, the statute allows the use of a stamp to imprint a notary's seal, and the trial court erred in concluding otherwise.

The trial court also erred in concluding that the July 9, 2012 power of attorney was merely a contract to make "a will in the future." What is at issue is not whether Pauline intended to modify her will, but whether she intended to revise the Trust. As to that determination, the trial court found the power of attorney to be ambiguous and considered parol evidence to discern Pauline's intent. "The existence or nonexistence

4

of an ambiguity is a question of law for the court." (Citation omitted.) *Holmes v. Clear Channel Outdoor, Inc.*, 284 Ga. App. 474, 476 (2) (644 SE2d 311) (2007). Consequently, we give the trial court's finding no deference. *Dodds v. Dabbs, Hickman, Hill and Cannon, LLP*, 324 Ga. App. 337, 345 (3) (750 SE2d 410) (2013) ("In reviewing a question of law, as here, we owe no deference to a trial court's ruling on a legal question.") (footnote omitted).

Here, the power of attorney unambiguously provided that Pauline wanted Tony to be the sole trustee. In that document, Pauline stated that she "revoke[d] any special powers of attorney[,] will[,] or trust agreement" she had previously signed. Despite her use of the term "revoked," Pauline clearly intended to modify, rather than revoke, the Trust, because she further explained that she wanted Tony to be the "executor" of her estate and the Trust. See OCGA § 53-12-40 (b) ("A power to revoke shall be deemed to include a power to modify, and an unrestricted power to modify shall be deemed to include a power to revoke."). Although Pauline used the title "executor," it is clear that she meant to name Tony as the trustee, because she expressed that Tony had "full ownership" of the Trust. "In construing a trust instrument it is the duty of a court to find the intention of the settlor and to effectuate that intention insofar as the

5

language used and the rules of law will permit." (Citation omitted.) *DeLoach v. Miller*, 157 Ga. App. 229, 230 (276 SE2d 897) (1981).

The Towns argue that if Pauline intended for the power of attorney to constitute a revision to the Trust, she would not have sent the August 2, 2012 letter to the law firm requesting the Trust be revised. However, Pauline also requested a change to her will in the August 2 letter. Nonetheless, although Pauline stated in the August 2 letter that she wanted the Trust to be revised, she ended by confirming that she had already made the revision in writing, ostensibly referring to the July 9 power of attorney. The fact that the law firm did not update the Trust to incorporate Pauline's intent did not render the July 9 power of attorney invalid, because only Pauline, as the settlor, could modify the Trust. See OCGA § 53-12-40 (a), (c). Accordingly, the trial court erred when concluding that the July 9 power of attorney did not constitute a valid modification to the Trust and in failing to construe that document to carry out Pauline's intent to name Tony as the sole trustee.

*Judgment reversed. Doyle, P. J., and Dillard, J., concur.*